REQUESTED BY: Douglas D. Christensen Commissioner of Education
You have requested an opinion from this office regarding what effect the 1997 enactments of LB 595 and LB 713 have upon the Nebraska Department of Education's duties with respect to certification and distribution of state aid payments to local school districts. Specifically, you have posed two questions which are set forth, below, following a brief statement of the facts which were supplied as background to the opinion request.
Pertinent Facts
Pursuant to Neb. Rev. Stat. § 79-1022 (1996), the Nebraska Department of Education ["NDE"] is required, on or before July 1 of each year,[1] to determine the amount of state aid that will be distributed to Nebraska public school districts under the state's statutory school finance formula. The certified state aid amounts are then distributed to the school districts in ten payments made from September through June of the ensuing school year. In developing their annual budgets, school districts are required to use the amount of state aid that the NDE has certified will be received for that particular school fiscal year. See Neb. Rev. Stat. § 79-1022. School districts must complete and file their proposed budget statements no later than August 1. Neb. Rev. Stat. § 13-504(1) (Supp. 1996).
The NDE utilizes information collected within the agency, from school district reports, and from other sources in order to calculate and certify each year's state aid payments. As to information regarding each school district's adjusted valuations, Neb. Rev. Stat. § 79-1016 requires that on or before July 1, 1997, the Property Tax Administrator compute and certify to the NDE "the adjusted valuation for the current calendar year of each district . . . so that the valuation of property for each district, for purposes of determining state aid [payments] . . ., shall reflect as nearly as possible state aid value [as defined by the statute]." The adjusted valuations utilized by the NDE in the 1997-98 state aid formula calculations were those provided to the NDE pursuant to Neb. Rev. Stat. § 79-1016.
At times, data relied upon in calculating and disbursing the statutory school finance formula payments is changed. In those circumstances, the NDE is required to recalculate a prior year's state aid payments so that each school district "will receive all funds to which it was finally determined to be entitled." Neb. Rev. Stat. § 79-1065 (1996). When the NDE recalculates state aid payments under § 79-1065, it incorporates adjustments in the following year's state aid payment amount. The NDE makes an annual recalculation for all school districts because of the fact that any adjustment (positive or negative) to one school district impacts all other districts receiving state aid payments in a particular year. See "Tax Equity Educational Opportunities Support Act," Neb. Rev. Stat. § 79-1001 — § 79-1033
(1996).
On June 26, 1997, the NDE certified to all school districts the amount of state aid payments which the districts would receive for the 1997-98 school year. The certification was based upon statutes which were current in June, 1997 — the time frame in which the NDE computed the 1997-98 payments. However, occurring concurrently with the NDE's 1997-98 state aid certification process was the Legislature's deliberation and enactment of LB 595. The legislation added the following new requirement:
 Beginning with the 1997-98 school fiscal year, in the school fiscal year beginning during the calendar year that a county board adopts special valuation for all qualifying property in the county pursuant to sections 77-1343 to 77-1348, the adjusted valuations used in the calculation of state aid shall not exceed one hundred eight percent of the assessed valuation for the property tax year on which the adjusted valuation is based.
Neb. Rev. Stat. § 79-1016(6) (as amended by 1997 Neb. Laws, LB 595, § 6) (effective June 10, 1997).
Analysis
Based upon these facts, we now address your two specific questions. To the extent that resolution of your inquiries turns on construction of the newly-enacted statutes, our analysis is governed by several well-established standards of statutory construction. First, in the absence of any indication to the contrary, statutory language is to be given its plain and ordinary meaning. State ex rel. City of Elkhorn v. Haney,252 Neb. 788, 792, ___ N.W.2d ___ (1997). Therefore, no interpretation is required to ascertain "the meaning of statutory words which are plain, direct, and unambiguous." Id. Finally, a statute "is open for construction when the language used requires interpretation or may reasonably be considered ambiguous." Id. at 793, ___ N.W.2d at ___; Omaha PublicPower Dist. v. Nebraska Dep't of Revenue, 248 Neb. 518,537 N.W.2d 312 (1995).
1. If any of the data provided to the Nebraska Department of Education was changed (or corrected) after the certification date specified in the statute (July 1 for 1997-98 State Aid and December 1 for 1998-99 State Aid and each year thereafter), is NDE required to do a recertification immediately, or are we required to use this information in the recalculation of the prior year's State Aid?
An initial duty imposed upon the NDE is to correctly calculate and certify school fiscal year state aid payments under the formula set forth in the "Tax Equity and Educational Opportunities Support Act." Once, however, changes or corrections are required to be made to an annual state aid calculation, the only duty imposed by law upon the NDE to recalculate state aid payments is that set forth in Neb. Rev. Stat. § 79-1065 (1996). The statute mandates that the NDE shall adjust state aid payments provided to school districts which, after final determination, received funds not equal to the appropriate allocation for a previous year. The purpose of the recalculation is to ensure that the district will receive all funds to which it was finally determined to be entitled. There is no duty under § 79-1065 to immediately recalculate state aid payments; rather, the statute contemplates an annual recalculation made by the NDE to rectify errors made in a previous year's calculation.
2. In addition, as LB 595 passed with the emergency clause, . . . my second question is (and it is our understanding that the Property Tax Division will also be asking you to address some questions regarding LB 595, 1997) should the certification of the 1997-98 State Aid, which was mailed on June 26, 1997, have the [LB 595, § 6] provision in the certification process?
The provisions of LB 595 were signed into law on June 9, 1997. Since the legislation contained an emergency clause, the provisions of the bill became operative on June 10, 1997. See
Neb. Const. art. III, § 27. Clearly, the NDE became obligated to operate under Neb. Rev. Stat. § 79-1016, as amended by LB 595, on June 10, 1997. What is not as clear is precisely how the NDE could comply with the LB 595 amendment by July 1, 1997, the date on which it was required to certify state aid payment amounts to each school district. Existing law requires that
 [a]djusted valuation means the assessed valuation of taxable property of each district in the state adjusted pursuant to the adjustment factors described in section 79-1016. . . . For calculation of state aid to be paid in school year 1996-97 and each school year thereafter, adjusted valuation means the adjusted valuation for the property tax year ending during the school year immediately preceding the school year in which the aid based upon that value is to be paid.
Neb. Rev. Stat. § 79-1003(2) (1996). This provision must be reconciled with the § 79-1016(6) provision, operative as of June 10, 1997, which requires, beginning with the current school fiscal year, that if a county board adopts a special valuation for certain agricultural and horticultural property in 1997 or future years, then the adjusted valuation used in the calculation of state aid shall not exceed 108 percent of the assessed valuation for the property tax year on which the adjusted valuation is based.
As a general rule, "[i]n the absence of clear legislative intent, a construction of a statute will not be adopted which has the effect of nullifying or repealing another statute." Stateex rel. City of Elkhorn, 252 Neb. at 794, ___ N.W.2d ___ (___); Georgetown Ltd. Part. v. Geotechnical Services,230 Neb. 22, 430 N.W.2d 34 (1988). Therefore, the plain meaning of both § 79-1003(2) and § 79-1016(6) must be construed so as to give legal effect to each statute. Section 79-1003(2) clearly directs the NDE to have utilized in its 1997-98 state aid certification adjusted valuations for the property tax year ending during the 1996-97 school year. Section 79-1016(1) directs the Property Tax Administrator to compute and certify to the NDE the adjusted valuations for the current calendar year. In addition, § 79-1016(6) clearly directs that specific valuations should not have exceeded 108 percent of the assessed valuations for certain property in certain counties. What is assumed by the LB 595 amendment is that the Property Tax Administrator would have data available from each of Nebraska's 93 counties with which to compute and certify to the NDE adjusted valuations which the NDE should have utilized in certifying the 1997-98 state aid payments to districts. Evidently, due to the time constraints imposed by existing statutes, the Property Tax Administrator was not able to provide to the NDE adjusted valuation figures reflecting the requirements of the LB 595 amendment. Thus, we conclude that, if applicable, the Neb. Rev. Stat. § 79-1016(6) provision should have been taken into account by the NDE in certifying state aid payments for the 1997-98 school year.
Sincerely,
 DON STENBERG Attorney General
 Lauren L. Hill Assistant Attorney General
APPROVED BY:
Don Stenberg
Attorney General
[1] Effective as of September 13, 1997, the NDE's certification of state aid payments will occur on or before December 1 of the year immediately preceding the ensuing school fiscal year. 1997 Neb. Laws, LB 713, § 5.